**No. 24-30539**

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

Cantium, L.L.C.,

Plaintiff - Appellee

v.

FDF Energy Services, L.L.C.,

Defendant - Appellant

---

**On Appeal from**
United States District Court for the Eastern District of Louisiana

2:23-CV-78

---

**BRIEF OF APPELLANT FDF ENERGY SERVICES, L.L.C.**

SUBMITTED BY:

Kriste Talton Utley (LSBA No. 25268)
Boykin & Utley. APLC
400 Poydras Street
New Orleans, LA 70130
Telephone: (504) 527-5450
Facsimile: (504)  527-5436
ktu@boykinandutley.com

## *CERTIFICATE OF INTERESTED PERSONS*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| Cantium, L.L.C. | Robert Johnston of Pusateri, Johnston, Guillot & Greenbaum, L.L.C. New Orleans, LA |
| Cantium, L.L.C. | Constance Waguespack of Pusateri, Johnston, Guillot & Greenbaum, L.L.C. New Orleans, LA |

| Appellants: | Counsel for Appellants: |
|---|---|
| FDF Energy Services, L.L.C. | Kriste Utley of Boykin & Utley New Orleans, LA |

| Other Interested Parties: | Counsel for Interested Parties: |
|---|---|
| William Jones | Charles Bourque of Martin & Bourque Houma, LA |
| Enterprise Offshore Drilling, LLC | Robert Johnston of Pusateri, Johnston, Guillot & Greenbaum, L.L.C. New Orleans, LA |
| JH Blades | |
| Hartford Fire Insurance Company | |
| National Fire & Marine Insurance Company | Robert Siegel of Laborde Siegel New Orleans, LA |

/S/*Kriste Talton Utley*
Attorney of record for Appellant,
FDF Energy Services, L.L.C.

iii

## *STATEMENT REGARDING ORAL ARGUMENT*

Pursuant to Fifth Circuit Rule 28.2.3 and Fed. R. App. P. 34(a)(1), and consistent with the provisions of Fed. R. App. P. 34(a)(2)(c), Defendant/Appellant respectfully requests oral argument in the captioned matter. Mover states that oral argument will help the Court in understanding the issues presented and to resolve any questions of law or fact that the Court might have. Oral argument will facilitate and not delay proper disposition of the matter.

## *TABLE OF CONTENTS*

CERTIFICATE OF INTERESTED PERSONS……………………….…iii

STATEMENT REGARDING ORAL ARGUMENT……………….……….iv

TABLE OF CONTENTS……………………………………………………….v

TABLE OF AUTHORITIES……………….………………….…..………….vii

JURISDICTIONAL STATEMENT ........................................................................1

STATEMENT OF THE ISSUES ..........................................................................2

STATEMENT OF THE CASE ..............................................................................3

    I.      FACTUAL BACKGROUND ......................................................3

            A.  THE UNDERLYING STATE CASE……………………………..3
            B.  THE PARTIES……………………………………………………5
            C.  THE CANTIUM – FDF MSA AND SERVICE ORDER………..7
            D.  THE CANTIUM-ENTERPRISE MSA AND SERVICE
                ORDER……………………………………………………10
            E.  FDF'S APRIL – MAY, 2021 WORK ORDER FOR
                CANTIUM………………………………………..…………10

SUMMARY OF THE ARGUMENT……………………………………..13

ARGUMENT………………………………………………………………..14

    I.      STANDARD OF REVIEW…………………………………………..14

    II.     CANTIUM'S CLAIMS FOR DEFENSE AND INDEMNITY……..14
            A. UNDER *In re:  LARRY DOIRON, INC.*, THE CANTIUM-FDF
              MSA WAS NOT A MARITIME CONTRACT, AND MARITIME
              LAW IS INAPPLICABLE…………………….………….…15
            B. AS THE WORK PERFORMED BY FDF WAS NOT CRUCIAL TO
              A VESSEL'S NAVIGATION, THE CANTIUM-FDF MSA WAS
              NON-MARITIME……………………………………………..18

C. THE CANTIUM-FDF MSA DID NOT PROVIDE FOR DEFENSE AND INDEMNITY FOR CONTRACTUAL CLAIMS AGAINST CANTIUM, AND CANTIUM DOES NOT HAVE STANDING AND/OR A RIGHT OR CAUSE OF ACTION AGAINST FDF…………………………………………………………..21

III.    CANTIUM'S CLAIMS FOR PAST FEES AND COSTS…………...22

A.  CANTIUM DOES NOT HAVE STANDING OR A RIGHT OR CAUSE OF ACTION TO BRING A CLAIM FOR PAST ATTORNEY'S FEES AND COSTS  PAID BY ITS INSURER…22

B. LIKEWISE, JH BLADES HAS NO RIGHT TO RECOVER PAST FEES AND COSTS……………….…………………………………24

C. THE MSA DOES NOT ALLOW FOR RECOVERY OF PAST ATTORNEY'S FEES AND COSTS……………………………26

CONCLUSION………………………………………………………...28

CERTIFICATE OF SERVICE………………….………………………...29

CERTIFICATE OF COMPLIANCE………………………………………..30

TABLE OF AUTHORITIES

**Acts**

Louisiana Oilfield Indemnity Act (LOAIA)….………………………3,4, 8, 13,14,15

Outer Continental Shelf Lands Act…………………………………………..14

**Federal Rules of Appellate Procedure**

Fed R. App. P. 28(a)(4)(A) through (D)………………………………………..1

Fed. R. App. P. 28(a)(5)…………………………………………………………..2

Fed. R. App. P. 34(a)(1)…………………………………………………………..iv

Fed. R. App. P. 34(a)(2)(c)………………………………………………………iv

**U. S. Code**

28 U.S.C. Section 1291…………………………………………………………..1

28 U.S.C. Section 1333…………………………………………………………..1

**Rules**

5th Cir. Rule 28.2.1………………………………………………………..iii

5th Cir. Rule 28.2.3………………………………………………………..iv

Fed. R. Civ. P. 56(a)……………………………………………………14

**Statutes and Code Articles**

La. R.S. 9:2780 ………………………………………………..,,8, 15

## <u>Cases</u>

*Barker v. Hercules Offshore, Inc.;*
    713 F.3d 208, 216-218 (5th Cir. 2013) *citing* 280 F.3d 492 (5th Cir. 2002)……21

*Cardosa-Gonzalez v. Anadarko Petro. Corp.;*
    326 F.Supp. 3d 273 (E.D.L.A. 2018)………………………………………..14

*Corbit v. Diamond M. Drilling Co.;*
    654 F.2d 329, 330 (5th Cir. 1981)…………………………………………...22

*Dominque v. Ocean Drilling & Exploration Co.;*
    923 F.2d 393 (5th Cir. 1991)…………………………………………………...21

*Duval v. No Assure Co. of Am.;*
    722 F.3d 300 (5th Cir. July 5, 2013)…………………………………24,25,26,28

*Earnest v. Palfinger Marine U.S.A., Inc.;*
    90 F.4th 804 (5thCir.2024), 90 F.4th 804, 813 (5th Cir. 2024)..………………18,19

*Foreman v. Exxon Corp.;*
    770 F2d 490, 497 (5th Cir. 1985)……………………………………………22

*Gulf Offshore Co. v Mobil Oil Corp.;*
    453 U. S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981)………………………..14

*Hoda v. Rowan Companies, Inc.;*
    419 F.3d 379, 383 (5th Cir. 2005)……………………………………......21

*In re: Larry Doiron, Inc.;*
    879 F.3d 568 (5th Cir. 2018) ……………………………11,13,15,16,17,18,19

*In re: Offshore Servs;*
    663 F.Supp. 3d 594 (E.D.L.A. March 22, 2023)(Morgan J);…………………13

*In the Matter of Aries Marine Corporation, et al;*
   Civ. A 19-10850, r. doc. 241 at p.13, 2023 US. Dist. LEXIS 18204
   (E.D. La. 2/3/2023) (Africk, J.)…………………………………………...13

*Leger v. Offshore Staffing Servs. Of Acadiana LLC;*
   11-1539, 2013 U. S. Dist. LEXIS 163995, 2013 wl 6075640 (W.D. LA,
   Nov. 18, 2013)……………………………………………………………..21

*Marcel v Placid Oil Co.;*
   11 F.3D 573 (5th Cir. 1994)………………………………………….…..15

*Quarter North Energy LLC v. Supreme Offshore Servs.;*
   655 F.Supp. 3d 461 (Bnkr. S.D. Tex, 2021)……………………………………19

*Reel Pipe, LLC v. USA Comserv., Inc.;*
   427 F.Supp 3d 786, 800 *(E.D. La. 2019)………………………………...23

*Sprint Commc'ns Co. L.P. v. APCC Servs., Inc.;*
   554 U.S. 269, 128 S.Ct. 2531, 2535, 171 L.Ed.2d 424 (2008)………………....23

*Union Tex. Pet. Corp. v. PLT Eng'g. Inc.;*
   895 F.2d 1043, 1050 (5th Cir. 1990)………………………………………14

*Weeks Marine Inc. v. Standard Concrete Prods., Inc.;*
   737 F.3d 365, 368 (5th Cir. 2013)…………………………………………14

*Willis v. Barry Graham Oil Serv., LLC;*
   122 F.4th 149, 153-54 (5th Cir. 2024)……………………………………..14

## **Other**

Benedict on Admiralty §182……………………………………………………18

## *JURISDICTIONAL STATEMENT*

In accordance with FED. R. APP. P. 28(a)(4)(A) through (D), Appellant submits:

A. The Plaintiff Appellee asserted in its Complaint that the district court had subject matter jurisdiction pursuant to 28 U.S.C. Section 1333 for admiralty and maritime claims.

B. The United States Court of Appeals for the Fifth Circuit has jurisdiction under 28 U.S.C. Section 1291.

C. The Final Judgment was entered by the district court on August 22, 2024 granting judgment in favor of Plaintiff and against Defendant. Notice of Appeal was timely filed by Defendant on September 19, 2024.

D. Defendant appealed the Final Judgment entered in this action on August 22, 2024 granting judgment in favor of Plaintiff against Defendant, the Orders and Reasons on Plaintiff's motion for summary judgment entered on April 2, 2024 and June 7, 2024, the Order and Reasons denying Defendant's Rule 59 and 60 Motion for New Trial entered on July 22 2024, and all other rulings, orders, and judgments of the district court.

# STATEMENT OF THE ISSUES

In accordance with FED. R. APP. P. 28(a)(5), Defendant/Appellant submits the following issues for review on appeal:

1. Whether the district erred in finding that the master services agreement ("MSA") between Cantium, LLC ("Cantium") and FDF Energy Services, LLC ("FDF") was a maritime contract, and/or that the work being performed by FDF under the MSA was maritime in nature.

2. Whether the district court erred in applying maritime law rather than Louisiana law.

3. Whether the district court erred in failing to apply the Louisiana Oilfield Anti-Indemnity Act.

4. Whether the district court erred in finding that FDF owes defense and indemnity to Cantium and its sub-contractor, Enterprise Offshore Drilling, LLC ("Enterprise"), for personal injury claims brought by FDF employee, William Jones, against Enterprise.

5. Whether the district court erred in finding that Cantium has standing and/or a right of action or cause of action in this matter.

6. Whether the district court erred in finding that Cantium could recover past attorney's fees and costs paid by its insurer.

7. Whether the district court erred in finding that Cantium's insurer could recover past attorney's fees and costs that it paid.

8. Whether the district court erred in granting summary judgment in favor of Plaintiff Cantium, and denying summary judgment in favor of Defendant FDF.

### *STATEMENT OF THE CASE*

Before the Court is an appeal arising out of the district court's rulings on cross motions for summary judgment filed by Defendant/Appellant, FDF, and Plaintiff/Appellee, Cantium. The district court ruled in favor of Cantium and against FDF, holding that the contract between the two entities was maritime in nature and declining to apply Louisiana law, specifically the Louisiana Oilfield Anti-Indemnity Act ("LOAIA"). The court held that FDF owed defense and indemnity to Cantium's other contractor, Enterprise Offshore Drilling, LLC ("Enterprise"), for a personal injury action brought by an FDF employee in Louisiana state court. The district court also held that FDF owed past attorney's fees and costs that had been paid by Cantium's insurer. FDF appeals the district court's judgment and respectfully requests that this Honorable Court reverse the judgment and render judgment in FDF's favor dismissing all claims against FDF with prejudice, or alternatively reverse and remand the matter for further proceedings.

### I.  Factual Background

#### A. The underlying state case

FDF employee, William Jones, brought suit in the Louisiana 25th JDC in Plaquemines Parish, alleging he was injured on April 25, 2021 while working on a jack-up rig owned by Enterprise, the Enterprise 205, which was at the time "jacked-up" or stationary and affixed to the Outer Continental Shelf ("OCS") off the coast

of Louisiana.[1] During the subject incident, Mr. Jones was struck by the stringer from a crane owned by Enterprise and being operated at the time by Enterprise employees.[2] There is no evidence and no party contends that either Cantium or FDF was at fault for the subject accident.[3] Only Enterprise and its employees are named as defendants in the Jones state court case.[4]

Pursuant to its Master Services Agreement ("MSA") with Cantium, Enterprise paid a Marcel premium to Cantium's insurer, JH Blades.[5] Enterprise tendered its defense and indemnity to Cantium and the insurer who accepted the tender.[6] Cantium in turn tendered the defense and indemnity to FDF.[7] Although the MSA between Cantium and FDF also contained a Marcel provision, Cantium failed to pay the Marcel premium. Because the work performed by FDF under the MSA was not maritime in nature, the LOAIA applied in absence of payment of the Marcel premium. Therefore, FDF declined the tender. Thereafter, Cantium filed this declaratory action against FDF in the Eastern District of Louisiana.

---

[1] ROA.24-30539.13.
[2] ROA.24-30539.13.
[3] ROA.24-30539.1092 – 1093.
[4] ROA.24-30539.13.
[5] ROA.24-30539.1436 – 1437, 1720 – 1789, 1790 – 1797.
[6] ROA.24-30539.13.
[7] ROA.24-30539.13.

**B. The Parties**

Cantium owned and operated the BC7 well and its platform in Main Pass 41 on the OCS off the coast of Louisiana where the subject incident took place and contracted with both Enterprise, to provide a jack-up drilling rig, and FDF, to clean drilling tanks.[8]

FDF was a company based out of Crowley, Louisiana which performed drilling tank cleaning services and drilling fluids for the oil and gas industry.[9] FDF was formed in January of 2019 following the restructuring of its predecessor, Francis Drilling Fluids, Ltd..[10] Most of FDF's work was performed on land for land-based drilling operations.[11] However, FDF does perform its tank cleaning services on stationary jack-up rigs affixed to the OCS.[12] The tanks which FDF cleaned on rigs were only used for the purposes of drilling and not to make the rigs navigable or allow the rigs to move.[13] All of the cleaning equipment used by FDF on the Enterprise 205 or other jack-up rigs could be used and were used for land-based operations.[14] FDF did not perform tank cleaning services on open water or while

---

[8] ROA.24-30539.13.
[9] ROA.24-30539.1089, 1363.
[10] ROA.24-30539.1807.
[11] ROA.24-30539.1809.
[12] ROA.24-30539.1816.
[13] ROA.24-30539.1809, 1363.
[14] ROA.24-30539.1915 – 1917.

vessels are in navigation, because to do so would be dangerous.[15] FDF's employees, including William Jones, were not considered seamen.[16]

Enterprise owned the Enterprise 205 jack-up rig upon which William Jones was injured and the crane which struck William Jones, and Enterprise employed the employees who were operating the subject crane at the time of the incident.[17] The Enterprise 205 is a jack-up rig which is not self-propelled and must be jacked down into the water and towed with tow boats to move to a new location.[18] To affix the Enterprise 205 to the seabed floor, a mat and poles are jacked down to the seabed floor, then the platform and the drilling package is jacked up out of the water.[19] The drilling package is then cantilevered out over and attached to the platform that is provided by the owner/operator of the well (in this case, Cantium).[20]

It is undisputed that, when entering into the Cantium-FDF MSA, FDF did not consider a jack-up rig, such as the Enterprise 205, a vessel for purposes of FDF's work under the Cantium-FDF MSA as the rigs were always jack-uped and stationary when FDF performed its work.[21]

---

[15] ROA.24-30539.1918 – 1919.
[16] ROA.24-30539.1950.
[17] ROA.24-30539.13.
[18] ROA.24-30539.1382.
[19] ROA.24-30539.1386.
[20] ROA.24-30539.1386 – 1388.
[21] ROA.24-30539.1927 – 1928, 1957 – 1958.

**C. The Cantium-FDF MSA and Service Order.**

Since its formation, Cantium drafted and distributed a form Master Services Agreement ("MSA") to its contractors.[22] FDF did not draft the subject MSA or negotiate its terms except for pay rates.[23] The Cantium-FDF MSA in effect at the time provided identical "knock-for-knock" indemnity provisions for both the Contractor (FDF) and the Company (Cantium), that read as follows for the Contractor:

> Contractor shall defend, protect, indemnify and hold harmless Company Group from and against any and all claims brought by any person, party or entity for personal or bodily injury to, sickness, disease or death of any member of contractor group … arising out of or in connection with the performance or non performance of the services  under this agreement or any services order. It is the express intention of Company and Contractor that the indemnity provided for in this paragraph is an indemnity by Contractor to indemnify and protect Company Group from the consequences of Company Group's own negligence, fault or struct liability, whether that negligence, fault or strict liability is the sole, joint or concurring cause of the injuries or death or property damage.[24]

"Company Group" was defined in both MSAs as "Company, Company's Affiliates, Joint Interest Owners and their Affiliates, and their contractors and subcontractors" to include Cantium and the companies that Cantium contracts with such as

---

[22] ROA.24-30539.1127.
[23] ROA.24-30539.1811, 1923.
[24] ROA.24-30539.1234 – 1236.

Enterprise.[25] Further the Cantium-FDF MSA included a section entitled "Marcel Exception" which stated:

> In the event and to the extent that the [indemnification sections] are subject to Louisiana law and the Louisiana Oilfield Indemnity Act (La. R.S. 9:2780, as the same may be amended from time to time), and the Marcel exception thereto, and so long as such statute and exception are in force, then the following rights and obligations shall apply. Each Party who would be the indemnified party under [the indemnity provisions] shall pay to the underwriter(s) of the other Party would be the indemnifying party under the applicable provisions of the [indemnity section] the premium required by those underwriters.[26]

Notably, FDF's predecessor, Francis Drilling Fluids, entered into an MSA with Cantium which did **not** include the Marcel Exception.[27] The Marcel Provision was only added later to the 2019 MSA (at issue in this case) and was a clear indication that Cantium was aware Louisiana law could apply to the Cantium-FDF MSA.[28] This also supported FDF's expectation that its MSA would not be governed by maritime law.[29] The majority of FDF's customers did pay a Marcel Exception premium.[30] In fact, FDF expected Cantium to pay a Marcel Exception premium under the Cantium-FDF MSA if Cantium intended to seek defense and indemnity

---

[25] ROA.24-30539.1060, 1216 – 1277.
[26] ROA.24-30539.1060, 1231.
[27] ROA.24-30539.1060, 1282 – 1341.
[28] ROA.24-30539.1060, 1231.
[29] ROA.24-30539.1950 – 1951.
[30] ROA.24-30539.1958.

and expected the Marcel Exception provision of the Cantium-FDF MSA, as discussed above, to apply in that event.[31] It is undisputed that Cantium failed to pay a Marcel premium under the MSA.

Furthermore, attached to and incorporated in the Cantium-FDF MSA was a "Master Service/Purchase Order".[32] The completed and signed Purchase Order (Exhibit A to the Cantium FDF/MSA) indicated that vessels would not be used as follows:

> **III. VESSELS**
> ☐ Transportation Vessel
> ☐ Support Vessel – (See Section IX, #5) If checked, Contractor must comply with Section IX, #5 – Work Reporting Requirements.
>
> [33]

"Vessels" was not checked because FDF did not lease, own, or operate any vessels.[34] As FDF's representative testified, FDF did not expect a vessel to play a substantial role in the completion of the Cantium-FDF MSA, because they did not provide tank cleaning services on vessels in navigation.[35]

---

[31] ROA.24-30539.1951 – 1952.
[32] ROA.24-30539.1060, 1278 – 1281.
[33] ROA.24-30539.1060, 1278 – 1281.
[34] ROA.24-30539.1926 – 1927, 1060, 1278 – 1281.
[35] ROA.24-30539.1927, 1950 – 1951.

## D. The Cantium-Enterprise MSA and Service Order

The MSA between Cantium and Enterprise ("Cantium-Enterprise MSA") was virtually identical to the Cantium-FDF MSA.[36] It included identical indemnity and Marcel Exception language.[37] It is undisputed that Cantium required Enterprise to pay a Marcel Exception premium, and Cantium in turn accepted Enterprise's defense and indemnity for Enterprise's own negligence.[38] Cantium's insurer, JH Blades, retained and paid Cantium's attorneys to defend Enterprise and its employees in the William Jones state court litigation.[39] However, Cantium did not pay a Marcel Exception premium under the FDF MSA, but still expected FDF to defend and indemnify Enterprise for Enterprise's negligence in the Williams Jones' matter.[40]

## E. FDF's April – May, 2021 Work Order for Cantium

When Cantium needed FDF to perform work under their MSA, a Cantium employee would do a verbal "call out" as provided in the both the Cantium-FDF MSA and the Service Order.[41]  In order for FDF to perform work for Cantium, a call out was required for each job, and the call outs were always done by phone (or verbally).[42] For each call out, a Cantium employee would call FDF and give FDF

---

[36] ROA.24-30539.1342, 1579 – 1690.
[37] ROA.24-30539.1342, 1579 – 1690.
[38] ROA.24-30539.1436 – 1437, 1720 – 1789, 1790 – 1797.
[39] ROA.24-30539.1479.
[40] ROA.24-30539.2017.
[41] ROA.24-30539.1060, 1216 – 1277, 1691 – 1719, 1278 – 1281.
[42] ROA.24-30539.1930, 1953 – 1954.

the details and location for each new job.[43] FDF would create a separate work order

number for each call out.[44] Notably, this verbal work order system was the same as

the one at issue in the *Doiron* case, which also involved a verbal (rather than written)

work order.[45]

Leading up to Mr. Jones' accident, FDF had been called out by phone to begin

a new tank cleaning job for Cantium starting on April 23, 2021 on the Enterprise

205 located at BC7 Well in the Main Pass off the coast of Louisiana. FDF assigned

Work Order No. OR0308804 to this job to document details for the new job and its

work performed.[46] For Work Order No. OR0308804, FDF was to clean the tanks on

the rig as the drilling operation was going from an oil-based mud into a drill-in fluid

as the next step in the drilling process.[47] FDF would also clean the shakers which

would take in the mud mixed with cuttings from where the wells were being drilled,

and separate the cuttings from the mud so the mud could pass again through the

drilling bit for lubrication purposes.[48] The FDF crew was on the Enterprise 205 from

April 23rd to May 1st of 2021.[49] During the entire time period in question, the

Enterprise 205 was jacked-up and affixed to the OCS and connected to Cantium's

---

[43] ROA.24-30539.1930, 1953 – 1954.
[44] ROA.24-30539.1930, 1953 – 1954.
[45] *In re Larry Doiron, Inc.*, 879 F.3d 568 (5th Cir. 2018).
[46] ROA.24-30539.1798, 2015 – 2016.
[47] ROA.24-30539.1088.
[48] ROA.24-30539.1848 - 1849, 1361.
[49] ROA.24-30539.1097 – 1098.

fixed platform at its BC7 well.[50] During the time the FDF crew was on the Enterprise 205, the Enterprise 205 was drilling for the purpose of oil exploration and FDF was aiding in the drilling operation by cleaning the tanks used for the drilling process.[51]

Based upon the evidence herein, FDF was performing non-maritime work for Cantium under Work Order No. OR0308804 on the day that William Jones was injured. Furthermore, FDF did not expect a vessel to play a substantial role in the work it was performing under the subject MSA on that date. Therefore, Louisiana law rather than maritime law should have been applied by the district court, and the court's ruling that FDF owes defense and indemnity was in error. Furthermore, the district court erred in its ruling that FDF owes reimbursement for past fees and costs paid by Cantium's insurer.

---

[50] ROA.24-30539.1377, 1393, 1118.
[51] ROA.24-30539.1395.

## *SUMMARY OF THE ARGUMENT*

Louisiana law, including the LOAIA, applies in this action and precludes enforcement of the disputed defense and indemnity provisions in the Cantium-FDF MSA, because the work performed under the MSA was not maritime in nature, and moreover, FDF did not expect a vessel to play a substantial role in the work being performed. Therefore, there was no shared expectation that maritime law would apply.[52] Cantium was not sued in the underlying state case filed by FDF employee, Wiliams Jones. Cantium has admitted it is seeking to enforce "the pass through tender of Enterprise to FDF," although it has no standing to do so. Cantium also brought claims for past/incurred attorneys' fees and costs paid by its insurer, JH Blades, for both defense of the Jones state court case and also for prosecution of the present federal declaratory action. However, Cantium has no standing to recover past fees and costs paid by its insurer, and moreover, FDF had no contractual relationship with JH Blades obligating FDF to reimburse fees and costs paid by the insurer.[53] For these reasons, the district court's judgment should be reversed.

---

[52]See *In Re Doiron*, 879F.3d 568 (5th Cir. 2018) (*en banc*); *In Re Offshore*, Servs., 663 F.Supp.3d 594 (E.D.L.A. March 22, 2023) (Morgan, J.); *In the Matter of Aries Marine Corporation, et al.*, Civ. A. 19-10850, R. Doc. 241 at p. 13, 2023 U.S. Dist. LEXIS 18204 (E.D. La. 2/3/2023) (Africk, J.).

[53]FDF plead lack of standing, no right, and no cause as affirmative defenses in its answer. See ROA.24-30539.250, 252-253.

## *ARGUMENT*

### I.  <u>Standard of Review</u>

The appellate court reviews a district court's grant of summary judgment, including on cross-motion, *de novo*.[54]  Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[55]

### II. <u>Cantium's Claims for Defense and Indemnity</u>

The Outer Continental Shelf Lands Act ("OCSLA") declares that federal law incorporating the law of the adjacent state, applies to fixed structures on the outer continental shelf.[56]  The parties agree that the controversy arises on an OCSLA situs off the coast of Louisiana and that Louisiana law is not inconsistent with federal law.[57] Pursuant to Louisiana law, FDF does not owe defense and indemnity to Enterprise and/or its employees.  The evidence supports that Enterprise was solely at fault for the subject incident involving FDF employee, William Jones. Under the LOAIA, oilfield agreements are void to the extent that the agreements contain provisions for indemnification for losses caused by an indemnitee's own negligence

---

[54]*See Willis v. Barry Graham Oil Serv., L.L.C.,* 122 F.4th 149, 153-54 (5th Cir. 2024); *Weeks Marine,* Inc. v. Standard Concrete Prods., Inc., 737 F.3d 365, 368 (5th Cir. 2013).
[55] Fed. R. Civ. P. 56(a).
[56] *Cardosa-Gonzalez v. Anadarko Petro. Corp.,* 326 F. Supp. 3d 273 (E.D.L.A. 2018).
[57] *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 101 S. Ct. 2870, 69 L. Ed. 2d 784 (1981); *Union Tex. Pet. Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1050 (5th Cir. 1990).

or fault.[58] An exception to the LOAIA is the Marcel Exception where a premium can be paid by the indemnitee for defense and indemnity even for its own liability.[59] It is uncontested that Cantium did not pay a Marcel Exception premium, although Cantium required Enterprise pay a Marcel Exception premium to Cantium's insurer.

Nevertheless, the district court held that federal maritime law applied over state law, after concluding that the MSA in question was a maritime contract.[60] For the following reasons, the judgment should be reversed.

## A. Under *In re Larry Doiron, Inc.,* the Cantium-FDF MSA was not a maritime contract, and maritime law is inapplicable.

*In re Larry Doiron, Inc.* is the seminal case decided by this Court on the issue of determining whether a contract is maritime.[61]  In *Doiron*, the Court established the following dual-inquiry test to determine whether a contract in the oil and gas context is maritime: (1) whether the contract is one to provide services to facilitate the drilling or production of oil or gas on navigable waters; and (2) the parties expect that a vessel will play a substantial role in the completion of the contract.[62]  If the answer to both inquiries is "yes," then the contract is maritime and federal law must apply.  The Court specifically emphasized that the expectations of the parties in entering the contract was the crucial determination in the test. The Court noted,

---

[58] La. R.S. 9:2780.
[59] *Marcel v. Placid Oil Co*., 11 F.3d 573 (5th Cir. 1994).
[60] *In re Larry Doiron, Inc.*, 879 F.3d 568 (5th Cir. 2018).
[61] *In re Larry Doiron, Inc.*, 879 F.3d 568 (5th Cir. 2018).
[62] *In re Larry Doiron, Inc.*, 879 F.3d 568 (5th Cir. 2018).

"[t]his is the proper approach in a contract case and assists the parties in evaluating their risks, particularly their liability under indemnification clauses in the contract."[63]

In addition to the factors above, the Court pointed to several considerations where the scope of the contract or the extent to which the parties expected vessels to be involved was unclear.  In resolving those issues, the Fifth Circuit found **the work actually performed and the extent of vessel involvement in the job and the seamen status of a crew** would be relevant.[64] In the fact scenario in *Doiron,* the Fifth Circuit looked at the oral work order performed during the accident at issue (similar to the oral work order in this present case) and found that the parties did not expect a vessel to play a substantial role.

Applying the *Doiron* two-pronged test, the Cantium-FDF MSA was a non-maritime contract. With respect to the first prong of the *Doiron* test, although it is evident that the Cantium-FDF MSA primarily involved services related to oil drilling operations, including tank cleaning and drilling fluids, FDF's services are not inherently tied to navigation, commerce, or transportation on navigable waters.[65] Rather, the services are related to oil exploration and extraction.[66] In fact, FDF could not perform its

---

[63] *Id.*
[64] *Id.*
[65] ROA.24-30539.1918 – 1919.
[66] ROA.24-30539.1395.

services on a vessel while in navigation.[67] Under the second prong of the test, the evidence supported that FDF did not expect a vessel to play a substantial role in the completion of the contract. FDF's services, although related to oil drilling, do not require the use of vessels or involve maritime transportation. FDF did not own, operate, or lease any vessels, and its employees were not seamen, further indicating that maritime activities were not central to the completion of the contract.[68] Further, on the Cantium-FDF MSA Purchase Order, Cantium did not check "vessels" to indicate a vessel was not required to complete the work under the contract.[69] FDF's representative testified that FDF did not expect a vessel to play a substantial role in the completion of the Cantium-FDF MSA, because FDF did not provide tank cleaning services on vessels in navigation.[70] Considering both inquiries outlined in *Doiron*, it is clear that the Cantium-FDF MSA does not satisfy the criteria for a maritime contract.

More generally, however, the purpose of the *Doiron* test itself is to focus on the intent of the parties. In this case, the parties did not intend for the Cantium-FDF MSA to be maritime.[71] This is evidenced by the inclusion of the Marcel Exception language within the amended version of the applicable MSA (versus the lack of said

---

[67] ROA.24-30539.1918 – 1919.
[68] ROA.24-30539.1926 – 1927, 1060, 1278 – 1281.
[69] ROA.24-30539.1926 – 1927, 1060, 1278 – 1281.
[70] ROA.24-30539.1927, 1950 – 1951.
[71] ROA.24-30539.1926, 1949 – 1950.

language in the prior version of the MSA) and the fact that Cantium required
Enterprise, the owner of the Enterprise 205, to purchase Marcel Exception
coverage.[72] Further, FDF testified definitively that, as a company that cleans tanks
for oil drilling they did not expect nor did they intend to be subject to maritime law.[73]
FDF, a  Louisiana company, was contracting with another Louisiana company,
Cantium, to perform services related to oil drilling and production.[74] FDF did not
employ seamen (a crucial inquiry under *Doiron)* and did not own or operate
vessels.[75] Based upon the facts as expressed above, when FDF was evaluating its
risks in entering into the Cantium-FDF MSA, it did not expect to take on risks
associated with maritime services and navigation through waters. Therefore, the
Cantium-FDF MSA was non-maritime, and Louisiana law should apply.

### B. As the work performed by FDF was not crucial to a vessel's navigation, the Cantium-FDF MSA was non-maritime.

More recently, on January 11, 2024, this Court revisited and further defined
the *Doiron* test in *Earnest v. Palfinger Marine U S A, Inc.*[76] In *Earnest,* the Court
examined 1 BENEDICT ON ADMIRALTY § 182 which stated:

> In general, a contract relating to a ship in its use as such,
> or to commerce or navigation on navigable waters, or to
> transportation by sea or to maritime employment is subject
> to maritime law and the case is one of admiralty

---

[72] ROA.24-30539.1060, 1282 -1341.
[73] ROA.24-30539.1926, 1949 – 1950.
[74] ROA.24-30539.13.
[75] ROA.24-30539.1926 – 1927, 1950, 1060, 1278 -1281.
[76] 90 F.4th 804, 813, (5th Cir. 2024).

jurisdiction, whether the contract is to be performed on
land or water.

However, the Court in *Earnest,* noted that a "mere reference to ships or vessels is not enough."[77] Instead, the Court noted that there must be "a direct a substantial link between the contract and the operation of the ship, its navigation, or its management afloat."[78] In summary, the Court found that the focus whether contract is maritime "is on the contract and the parties' expectations, and the role of the vessel should be viewed in light of what is considered classically maritime."[79]

Since *Doiron,* the Fifth Circuit and this Court have emphasized the importance of the activity being related to a vessel "in navigation" for being considered a maritime contract.[80] Courts have applied the necessary requirements for an employee to be considered a seaman under the Jones Act to determine if a contract is maritime under *Doiron.* The Court generally finds that workers who spend less than thirty percent of their time "in the service of a vessel in navigation" do not qualify as a seaman.[81] Therefore, it follows that where employees of a company, such as FDF, under an MSA do not spend thirty percent of their time "in service of a vessel in navigation", a contract cannot be maritime.

---

[77] *Id.*

[78] *Id.*

[79] *Id.*

[80] 90 F.4th 804 (5th Cir. 2024).

[81] *QuarterNorth Energy LLC v. Supreme Offshore Servs.*, 655 F. Supp. 3d 461 (Bnkr. S.D. Tex., 2021).

As it is undisputed that FDF did not perform any work under the Cantium-FDF MSA to service a vessel in navigation, the Cantium-FDF MSA was non-maritime. FDF was called out to the Enterprise 205 to clean the tanks used to house and clean drilling fluid used for lubrication in the drilling process (not for navigation).[82] FDF did not perform any work on a moving vessel because its job of cleaning tanks could not be safely or prudently accomplished while a vessel was moving.[83] Further, at the time of the subject incident, the Enterprise 205 was affixed to the OCS, jacked up and out of the water, connected to a fixed platform, and was actively drilling for oil.[84] There was no point at which FDF's crew was assisting with or part of the navigation of the Enterprise 205.[85] The Enterprise 205, in fact, was not part of its own navigation as it was not self-propelled, and did not have a captain, skipper, or crew.[86] Based on the foregoing, the Cantium-FDF MSA was a non-maritime contract, and Louisiana law should be applied.

Furthermore, the fact that the Enterprise 205 is a jack-up rig is not dispositive of whether maritime law should be applied. Jurisprudence has consistently held contracts are not maritime merely because work is being performed on a jack-up

---

[82] ROA.24-30539.1088.
[83] ROA.24-30539.1926 – 1927, 1950, 1060, 1278 – 1281.
[84] ROA.24-30539.1849, 1361.
[85] ROA.24-30539.1950.
[86] ROA.24-30539.1382.

drilling rig.[87] In fact, this Court has concluded under facts similar to this case that state law applied to non-maritime services being performed on a jack-up rig.[88]

In this case, FDF's tank cleaning services were related to oil drilling operations and were not intended to facilitate maritime navigation or transportation.[89] Notably, FDF did not own, operate, or lease any vessels, further emphasizing the non-maritime nature of its operations, and further FDF did not expect a vessel to perform a substantial role under the MSA.[90]  Therefore, the mere fact that the Jones accident occurred on a jack-up rig is not dispositive of the issue.  State law should have been applied by the district court.

### C. The Cantium-FDF MSA did not provide for defense and indemnity for contractual claims against Cantium, and Cantium does not have standing and/or a right or cause of action against FDF.

Cantium brought this action seeking indemnity and defense not for itself, but for Enterprise who was sued by Jones in state court and tendered defense and indemnity to Cantium. Neither Cantium nor FDF is a party to the Jones state court case. Although Enterprise is a member of the Contractor Group under the Cantium-

---

[87] *Hoda v. Rowan Companies, Inc.*, 419 F.3d 379, 383 (5th Cir.2005); *Domingue v. Ocean Drilling & Exploration Co.,* 923 F.2d 393 (5TH Cir. 1991); *Leger v. Offshore Staffing Servs. of Acadiana LLC*, 11-1539, 2013 U.S. Dist. LEXIS 163995, *12, 2013 WL 6075640 (W.D.L.A Nov. 18, 2013).
[88] *Domingue v. Ocean Drilling & Exploration Co.*, 923 F.2d 393, 397, (5th Cir. 1991) (A contract to perform wireline services on a jack-up drilling rig was not a maritime contract.); see also Judge Clement's concurrence in *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 216-218, (5th Cir. 2013) *citing* 280 F. 3d 492 (5th Cir. 2002).
[89] ROA.24-30539.1927, 1950 – 1951.
[90] ROA.24-30539.1927, 1950 – 1951.

FDF MSA, Enterprise is not a party to this action against FDF.  Cantium is therefore seeking defense and indemnity to cover its own contractual liability to Enterprise under their separate MSA.  However, Cantium does not have standing, or a right or cause of action, to compel FDF to defend and indemnify a third party, Enterprise, and furthermore the Cantium-FDF MSA indemnification provision does not provide indemnity for Cantium's contractual obligations owed to Enterprise.[91]  The district court erred by declining to follow *Corbit v. Diamond M. Drilling Co.* in this respect.

Based on the foregoing, the district court erred in granting Plaintiff Cantium's motion for summary judgment and denying FDF's motion.  FDF respectfully requests this Court reverse the district court's judgment and dismiss all claims against it with prejudice.

## III.    Cantium's Claims for Past Fees and Costs

### A. Cantium does not have standing or a right or cause of action to bring a claim for past attorney's fees and costs paid by its insurer.

Cantium in the present declaratory action and Enterprise in the William Jones matter are represented by the same counsel.[92] Cantium's insurer, JH Blades, retained and paid counsel to represent Enterprise in the Jones state court case.  JH Blades is not a party to this litigation and has not formally sought reimbursement for expenses

---

[91] See *Foreman v. Exxon Corp.* 770 F. 2d 490, 497 (5th Cir. 1985); *Corbit v. Diamond M. Drilling Co,* 654 F.2d 329, 330, (5th Cir. 1981).
[92] ROA.24-30539.13.

that it has incurred in its representation of Cantium and/or Enterprise. It is undisputed that Cantium itself actually has not incurred any fees or costs. Cantium does not have standing or the right to bring the present action. There is no provision in the subject Cantium-FDF MSA in which FDF agreed to reimburse or pay Cantium's insurance carrier for fees or costs that it paid.[93]

The elements of a breach of contract claim under federal maritime law are:

(1) a contract between the parties;
(2) a breach of that contract; and
(3) damages.[94]

Similarly, the Article III standing requirements are: (1) an injury in fact; (2) causation; and (3) redressability.[95]

Cantium has not established any of the three elements for breach of contract or for standing. Specifically, Cantium cannot show that it has suffered any damages because its insurer, JH Blades (who is not a party to this lawsuit), paid the fees and costs for both Enterprise in the William Jones action and Cantium in the present action. Therefore, Cantium's claims for past fees and costs should have been dismissed.

---

[93] ROA.24-30539.1216 – 1277.
[94] *Reel Pipe, LLC v. USA Comserv, Inc.*, 427 F. Supp. 3d 786, 800 (E.D. La. 2019).
[95] *Sprint Commc'ns Co., L.P., v. APCC Servs., Inc.*, 554 U.S. 269, 128 S. Ct. 2531, 2535, 171 L. Ed. 2d 424 (2008).

**B. Likewise, JH Blades has no right to recover past fees and costs.**

In *Duval v. No. Assure Co. of Am.,* this Court held that third-party insurers cannot enforce defense, indemnification, and insurance obligations under an insured's MSA with a another party.[96] In *Duval,* the Court examined a case where BHP was an energy exploration company.[97] Deep Marine contracted with BPH. An employee of a different BHP contractor sued Deep Marine for an injury. Deep Marine's insurance carriers sued BHP for defense and indemnity.[98] The applicable contract provision read as follows:

> Company [BHP] shall protect, defend, indemnify, release, and hold harmless Contractor Group from and against any and all claims arising out of, resulting from or in connection with the provision of the Goods and/or Services pursuant to this Contract for:
> (I) any injury, death, or illness suffered by any person in Company Group; and
> (II) any damage to or loss of any equipment, materials, vessels, or other property of any member of Company Group…[99]

It defined "Company Group" to include BHP, as well as its subsidiaries, affiliates, contractors, and subcontractors, and employees "of all of the foregoing." [100] Finally, the MSA defined "claims" to include "all claims losses, demands, causes of action,

---

[96] 722 F.3d 300 (5th Cir. July 5, 2013).
[97] *Id.*
[98] *Id.*
[99] *Id.*
[100] *Id.*

suits, proceedings, fines, penalties, judgments, obligations and liabilities of every kind and character." [101]

While the Court found that the contract between Deep Marine and BHP required BHP to provide defense and indemnity to Deep Marine, the Court found that the contract did not require BHP to provide defense and indemnity to Deep Marine's insurance carrier.[102] The Court reasoned that the parties could have included the Contractor's insurers within the definition of "Contractor Group," as parties in other cases have done, but they did not do so. Therefore, the insurers' claims against BHP were summarily dismissed.[103]

The language in *Duval* is strikingly similar to the Cantium-FDF MSA in the present case. Just as in *Duval*, reimbursement is being sought for past fees and costs paid by insurer JH Blades through the defense provisions of the Cantium-FDF MSA. Cantium did not pay the past fees and costs at issue; JH Blades did. However, just as in *Duval*, nothing in the MSA obligates FDF to reimburse JH Blades. Insurers were not included as a member of the Company Group under the MSA. JH Blades is not entitled to enforce the contract for past costs and attorneys fees. Accordingly, the claims brought by Cantium should have been dismissed.

---

[101] *Id.*
[102] *Id.*
[103] *Id.*

### C. The MSA does not allow for recovery of past attorneys' fees and costs.

In its complaint, Cantium cited Sections 18.2(K) and (L) of the Cantium-FDF MSA as the basis for seeking past attorneys' fees and costs for the defense of Enterprise in the William Jones state action and for Cantium's prosecution in the present federal action.[104] These provisions deal with failure to procure/provide insurance coverage, which has been neither alleged nor established in this matter.

Additionally, Section 18.1(K) specifically references "any loss Company Group may suffer." Notably, just as in *Duval,* neither Cantium nor Enterprise, as members of the Company Group, has incurred any expenses for attorneys' fees and costs in either action because JH Blades (the insurance carrier for both Cantium and also for Enterprise who paid a Marcel premium) assumed Enterprise's defense and Cantium's prosecution and paid all fees and costs. Insurance carriers are not referenced at all in the Cantium-FDF MSA and are not included in the definition of "Company Group." Regardless, JH Blades is not a party to this action. Therefore, past fees and costs paid JH Blades cannot be recovered in this action.  The district court erred in maintaining Cantium's action for past fees and costs.

---

[104] ROA.24-30539.1216-1277.

Notably, another important change was made to the Cantium-FDF MSA from the former Cantium/Francis Drilling Fluids MSA. The Cantium/Francis Drilling Fluids MSA included an arbitration clause which provided for the payment of attorneys' fees and costs should a party have to enforce the prior MSA.[105] However, the new Cantium-FDF MSA included no such provision.[106] Accordingly, Cantium's claims for attorneys' fees and costs incurred should have been denied.

Under *Duval,* as discussed above¸ JH Blades does not have the right to assert claims under the Cantium-FDF MSA. Simply put, Cantium has no standing to recover fees and costs paid by its insurer, JH Blades, and moreover, FDF had no contractual relationship with JH Blades obligating FDF to reimburse fees and costs paid by the insurer. As a matter of law, FDF cannot be liable to Cantium or JH Blades for past attorneys' fees and costs.

---

[105] ROA.24-30539.1282 – 1341.
[106] ROA.24-30539.1216 – 1277.

## *CONCLUSION*

For the foregoing reasons, Defendant/Appellant respectfully requests that the Court reverse the judgment of the district court and fully dismiss the claims against it, or alternatively reverse and remand the matter for further proceedings.

SUBMITTED BY:

*/s/ Kriste Talton Utley*
Kriste Talton Utley (LSBA No. 25268)
Boykin & Utley APLC
400 Poydras Street Suite 1540
New Orleans, LA 70130
Telephone: (504) 527-5450
Facsimile: (504) 527-5436
ktu@boykinandutley.com

Attorney for Appellant/Defendant,
FDF Energy Services, LLC

### *CERTIFICATE OF SERVICE*

I certify that on June 12, 2025, the foregoing document was forwarded via electronic mail on today's date to the following parties/counsel:

Robert Johnston

Constance Waguespack

Pusateri, Johnston, Guillot & Greenbaum, LLC

1100 Poydras St., Ste. 2250

New Orleans, LA 70163

*/S/ Kriste Talton Utley*

## *CERTIFICATE OF COMPLIANCE*

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1:  this document contains 7,072 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using this document has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO (Version 2304 Build 16.0.16327.20200) 64-bit 365 Word, version 2304 in 14-point font, Times New Roman.

Certified this 12th day of June, 2025.

*/s/ Kriste Talton Utley*