No. 24-30539

IN THE

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

Cantium, L.L.C.,

Plaintiff - Appellee

v.

FDF Energy Services, L.L.C.,

Defendant - Appellant

---

**On Appeal from**
United States District Court for the Eastern District of Louisiana

2:23-CV-78

---

**REPLY BRIEF OF APPELLANT FDF ENERGY SERVICES, L.L.C.**

SUBMITTED BY:

Kriste Talton Utley
Boykin & Utley
400 Poydras Street
New Orleans, LA 70130

## TABLE OF CONTENTS

Contents                                                                                                   Page(s)

TABLE OF CONTENTS......................................................................................... i

TABLE OF AUTHORITIES ...................................................................................1

REPLY ARGUMENT ............................................................................................2

    I.    Maritime law does not apply…………………………………………….2

A. *Doiron* requires analysis beyond the language of the blanket contract……2
B. Under *Doiron*, the Cantium/FDF MSA is governed by state law………....3
C. The fact that the work was being performed on a jack-up rig
   is not determinative of the issue of application of maritime law………..…5

    II.    Cantium is not entitled to recover past fees and
          costs paid by its insurer in the Jones' state case
          or in the present dec action……………………………………….……9

CONCLUSION............................................................................ …………11

CERTIFICATE OF SERVICE ..............................................................................12

CERTIFICATE OF COMPLIANCE......................................................................13

# TABLE OF AUTHORITIES

**Cases**…………………………………………………………………..……**Pages(s)**

*Barker v. Hercules Offshore, Inc.,* 713 F.3d 208 (5th Cir. 2013)……………………7

*Butcher v. Superior Offshore Int'l*, LLC, 2008 U.S. Dist. LEXIS 97712, *9, 2009 AMC 173 (E.D. La December 2, 2008) citing *Hufnagel v. Omega Service Indust., Inc.*, 182 F.3d 340, 347 (5th Cir. 1999) …………………………………………….5

*Demette v. Falcon Drilling Co.,* 280 F. 3d 492 (5TH Cir. 2002)………………...7

*Domingue v. Ocean Drilling & Exploration Co.,* 923 F.2d 393 (5TH Cir. 1991)…7

*Earnest v. Palfinger,* 90 F.4th 804, 813, (5th Cir. 2024)………………………..5, 6

*Hoda v. Rowan Companies, Inc.*, 419 F.3d 379, 383 (5th Cir.2005)………………7

*Leger v. Offshore Staffing Servs. of Acadiana LLC*, 11-1539, 2013 U.S. Dist. LEXIS 163995,  2013 WL 6075640 (W.D.L.A Nov. 18, 2013)………………………..7

*In re:  Larry Doiron, Inc.,* 879 F.3d 568 (5th Cir. 2018) ………………2, 4, 8, 9

*In the Matter of Aries Marine Corporation, et al.*, Civ. A. 19-10850, 2023 U.S. Dist. LEXIS 18204 (E.D. La. 2/3/2023)……………………………………………….4

*Pearson v. Offshore Specialty Fabricators, Inc*., No. 91-3350, 1992 U.S. Dist. LEXIS 15246, 1992 WL 300826 (E.D.La. 10/8/1992) …………………………5

*Quiroz v. C & G Welding, Inc.*, 16-15427, 2018 U.S. Dist. LEXIS 194647,  2018 WL 6003554 (E.D.L.A. November 15, 2018)……………………………………2

*Sanchez v. Smart Fabricators of Tex.*, 997 F.3d 564 (5th Cir. 2021)………….8

# REPLY ARGUMENT

Appellant, FDF Energy Services, LLC ("FDF"), respectfully submits the following in reply to the Appellee brief filed by Cantium, LLC ("Cantium").

## I. Maritime law does not apply.

**A. *Doiron* requires analysis beyond the language of the blanket contract.**

Cantium concedes in its appellee brief that the district court failed to examine the expectations of the parties, concluding that the MSA was a maritime contract simply because the accident occurred on a jack-up rig. This was not only factually in error, but also legal error as *Doiron* requires analysis not just of the terms of the blanket contract but also of the oral work order (the work actually being performed on the date in question), and most importantly, *Doiron* holds that analysis of the parties' expectations must be considered.[1] The Court further noted:

> The scope of the contract may be unclear; the extent to which the parties expect vessels to be involved in the work may also be unclear. In resolving these issues, courts may permit the parties to produce evidence of the work actually performed and the extent of vessel involvement in the job. It is also conceivable, for example, that the seamen status of a crew *** could be relevant to whether the vessel involvement was a substantial part of the overall contract…[2]

---

[1] *In re: Larry Doiron, Inc.;* 879 F.3d 568 (5th Cir. 2018) at 576. See also *Quiroz v. C & G Welding, Inc.*, 16-15427, 2018 U.S. Dist. LEXIS 194647, *11-12, 2018 WL 6003554 (E.D.L.A. November 15, 2018), where Judge Zainey applied *Doiron* finding that without the oral work order, the contract was inapplicable.

[2] *Id* at 577.

**B. Under *Doiron*, the Cantium/FDF MSA is governed by state law.**

Applying the *Doiron* two-pronged test, the Cantium-FDF MSA was a non-maritime contract. First, FDF's services were not inherently tied to navigation, commerce, or transportation on navigable waters.[3] Cantium acknowledges that FDF was performing tank cleaning services (as opposed to vessel cleaning services) on the day in question. It is undisputed that FDF never performed tank cleaning services under the Cantium/FDF MSA on vessels in navigation. In fact, FDF could not perform its services on a moving vessel or on open water because it would have been dangerous to do so.[4] On the Outer Continental Shelf ("OCS"), FDF performs tank cleaning services only on stationary jack-up rigs affixed to the seafloor.[5] The tanks which FDF cleaned on rigs were only used for the purposes of drilling and not to make the rigs navigable or allow the rigs to move.[6] All of the cleaning equipment used by FDF on the Enterprise 205 or other jack-up rigs could be used and were used for land-based operations, which made up most of its operations.[7]

Under the second prong of the test, the evidence supported that FDF did not expect a vessel to play a substantial role in the completion of the contract. FDF's services did not require the use of vessels or involve maritime transportation. FDF

---

[3] ROA.24-30539.1918 – 1919.
[4] ROA.24-30539.1918 – 1919.
[5] ROA.24-30539.1816.
[6] ROA.24-30539.1809, 1363.
[7] ROA.24-30539.1809, 1915 – 1917.

did not own, operate, or lease any vessels, and its employees (including William Jones) were not seamen, further indicating under *Doiron* that maritime activities were not central to the completion of the contract.[8] Further, on the Cantium-FDF MSA Purchase Order, "vessels" was not checked, indicating a vessel was not required to complete the work under the contract.[9] FDF's representative testified that FDF did not expect a vessel to play a substantial role in the completion of the Cantium-FDF MSA, because FDF did not provide tank cleaning services on vessels in navigation.[10] The MSA included a choice of law provision for state law and also a provision for a *Marcel* premium for non-maritime work (which most of FDF's customers paid). Furthermore, the expectation that a vessel would play a substantial role in the work under the MSA and work order must be a shared expectation.[11] The evidence overwhelmingly supports that FDF did not have that expectation. Under *Doiron*, the Cantium-FDF MSA was a non-maritime contract, and Louisiana law should be applied.

---

[8] ROA.24-30539.1926 – 1927, 1060, 1278 – 1281. See *Doiron* at FN 47.
[9] ROA.24-30539.1926 – 1927, 1060, 1278 – 1281.
[10] ROA.24-30539.1927, 1950 – 1951.
[11] See *In Re Doiron*, 879 F.3d 568 (5th Cir. 2018) (*en banc*); *In Re Offshore*, Servs., 663 F.Supp.3d 594 (E.D.L.A. March 22, 2023) (Morgan, J.); *In the Matter of Aries Marine Corporation, et al.*, Civ. A. 19-10850, R. Doc. 241 at p. 13, 2023 U.S. Dist. LEXIS 18204 (E.D. La. 2/3/2023) (Africk, J.).

### C. The fact that the work was being performed on a jack-up rig is not determinative of the issue of application of maritime law.

Cantium asserts immaterial facts in support of its assertion of FDF's expectation of substantial use of a vessel, such as FDF employees would "eat, sleep, and live" on the jackup rigs. Even considering a jack-up'ed stationary rig to be a vessel, federal jurisprudence has specifically found that time spent sleeping or eating cannot be counted as time spent on a vessel, "because this time was not spent 'in the service of a vessel in navigation.'"[12]

Cantium erroneously relies on the *Earnest* decision which is entirely distinguishable from the case at hand.[13]  In *Earnest,* this Court examined a contract wherein a subcontractor agreed to maintain and repair lifeboats attached to a floating platform, which was owned by the contractor, had legs temporarily attached to the seafloor, and which the parties agreed was not a vessel. One of the lifeboats detached and killed and injured two employees of the contractor.  The subcontractor sought defense and indemnity from the contractor. In evaluating this case, the Court noted that servicing of the lifeboats was required by Coast Guard regulations. Further, the

---

[12] *Butcher v. Superior Offshore Int'l*, LLC, 2008 U.S. Dist. LEXIS 97712, *9, 2009 AMC 173 (E.D. La December 2, 2008) citing *Hufnagel v. Omega Service Indust., Inc.*, 182 F.3d 340, 347 (5th Cir. 1999)(fact that plaintiff "ate, slept, and spent time" on vessel not considered in substantial connection analysis); *Pearson v. Offshore Specialty Fabricators, Inc.*, No. 91-3350, 1992 U.S. Dist. LEXIS 15246, 1992 WL 300826 (E.D.La. 10/8/1992) (plaintiff did not perform a substantial amount of work onboard the vessel even though he ate and slept there).
[13] *Earnest v. Palfinger,* 90 F.4th 804, 813, (5th Cir. 2024).

Court found that lifeboats are vessels because they are capable of being used as transportation across water.[14]

The fact scenario in the present case is completely distinguishable from the fact scenario in *Earnest*.[15] FDF did not service or maintain lifeboats (or any type of boats or vessels). FDF instead cleaned tanks. Further, the Enterprise 205, the jack-up rig upon which the subject accident occurred, is far from a lifeboat. The Enterprise 205 is a drilling rig which was jacked-up out of the water and attached to the seabed floor. It is not self- propelled and must be towed by two tow boats to a new location. Additionally, the subcontractor in *Earnest* was servicing the lifeboats, making sure that they were capable of navigating across water. FDF's work had nothing to do with the navigation or movement of the Enterprise 205. Accordingly, the fact scenario in *Earnest* is inapplicable to the present case.

However, close attention to the dicta in *Earnest* tends to exemplify that the contract in the present case is non-maritime. This Court in *Earnest* further defined *Doiron* focusing more on the "navigation" requirement of a "vessel in navigation.[16] The Court in *Earnest* also stated that a "mere reference to ships or vessels is not enough" to trigger maritime law.[17] Instead, the Court noted that there must be "a

---

[14] *Id.*
[15] *Earnest v. Palfinger,* 90 F.4th 804, 813, (5th Cir. 2024).
[16] 90 F.4th 804, 813, (5th Cir. 2024).
[17] *Id.*

direct a substantial link between the contract and the operation of the ship, its navigation, or its management afloat."[18] Further, the Court focused "on the contract and the parties' expectations".[19]

It is undisputed that the Enterprise 205 was not in navigation at the time of the incident or at any time that FDF would have been working under the Cantium/FDF MSA. FDF had nothing to do with the navigation of the Enterprise 205 or its management afloat. Accordingly, *Earnest* supports the conclusion that the Cantium/FDF MSA was a non-maritime contract.

Cantium notes that the district court cited to *Demette v. Falcon Drilling Co., Inc.* to assert that activities on a jack-up rig necessarily create a maritime contract.[20] However, *Demette* was decided in 2005[21], and since then, this Court modified the law with the *Doiron* decision. Even earlier cases noted that a jack-up rig's status is non-determinative of application of maritime law.[22] The district court erred in

---

[18] *Id.*
[19] *Id.*
[20] *Demette v. Falcon Drilling Co.,* 280 F. 3d 492 (5TH Cir. 2002).
[21] Judge DeMoss' dissent in *Demette* reviewed the intent and language of the OCSLA that was meant to apply to structures including jack-up rigs. Notably, Congress had intended after the passage of the OCSLA that all oil and gas activities on the OCS would be subject to state law. However, since the enactment of the OCSLA, jurisprudence has limited the law's scope in spite of Congress's intent. In 2013, Judge Brown Clement cited to Judge DeMoss' dissent in questioning the blanket application of maritime law to accidents on jack-up rigs. *Barker v. Hercules Offshore, Inc.,* 713 F.3d 208 (5th Cir. 2013).
[22] *Hoda v. Rowan Companies, Inc.*, 419 F.3d 379, 383 (5th Cir.2005); *Domingue v. Ocean Drilling & Exploration Co.,* 923 F.2d 393 (5TH Cir. 1991); *Leger v. Offshore Staffing Servs. of Acadiana LLC*, 11-1539, 2013 U.S. Dist. LEXIS 163995, *12, 2013 WL 6075640 (W.D.L.A Nov. 18, 2013).

stopping its analysis at jack-up rig involvement and blanketly applying *Demette* without any further analysis.

In *Doiron*, the Court stated that analysis of seaman status of crew members can be relevant to determining whether to apply maritime law to a contract.[23] In *Sanchez v. Smart Fabricators of Tex.*, this Court rejected seaman status for an accident occurring on a jack-up rig.[24] The Court analyzed whether maritime law should apply and whether a welder, who was injured while on another Enterprise jack-up rig, the Enterprise 263, was a seaman. The worker spent 13 days on the Enterprise 263 and then he was injured when he fell on the deck of the rig.[25] This Court noted:

> Our case law reveals generally that two types of workers are found on drilling rigs. First, we have the drilling crew, who conduct the drilling operations (and workers who support that activity) and stay with the vessel when it moves from one drilling location to another. These workers are the members of the crew of the vessel and are seamen. The second group are specialized transient workers, usually employed by contractors. These workers are engaged to do specific discrete short-term jobs. Discrete transient jobs are like the work done by longshoremen when a vessel calls in port… these workers have only a "transitory or sporadic" connection to a vessel or group of vessels and do not qualify for seaman status.[26]

---

[23] See *Doiron* at FN 47.
[24] *Sanchez v. Smart Fabricators of Tex.*, 997 F.3d 564 (5th Cir. 2021).
[25] *Id.*
[26] *Id.*

Though *Sanchez* did not address whether a services contract was maritime, the Court found the plaintiff was not performing sea-based work and was not a Jones Act seaman. Further, in *Doiron,* the Court suggested we use the following guidance to determine the maritime status of a contract:

> A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act. This figure of course serves as no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases. [27]

William Jones and indeed none of FDF's employees qualified as seamen or spent any time "in service of a vessel in navigation." Accordingly, under this Court's recent jurisprudence in *Sanchez* and *Doiron,* maritime law should not be applied to the present case. State law should be applied to hold that FDF does not owe defense and indemnity.

## II. Cantium is not entitled to recover past fees and costs paid by its insurer in the Jones's state case or in the present dec action.

Even if indemnity and defense were owed (which is strongly disputed), Cantium cannot recover past attorney's fees and costs paid by its insurer, JH Blades, who is not a party to this litigation. The district court erroneously held that FDF must pay

---

[27] *Larry Doiron, Inc. v. Specialty Rental Tools & Supply, L.L.P. (In re Larry Doiron, Inc.)*, 879 F.3d 568, 576, (5th Cir. 2018), at FN 47.

Cantium for past defense fees and costs paid by JH Blades in both the underlying state case brought by William Jones, and also in the present declaratory/enforcement action. At a minimum, Cantium lacks standing to recover fees and costs paid by its insurer. Furthermore, the Cantium/FDF MSA does not obligate FDF to pay fees and costs paid by Cantium's insurer.

It is undisputed that JH Blades, not Cantium, paid defense fees and costs. Notably, Cantium has argued JH Blades is entitled to subrogation against FDF but was unable to point to any evidence, law, or jurisprudence in support of its blanket proposition. Cantium cites to the language in its insurance policy that allows subrogation. However, FDF is not a party to the insurance contract between Cantium and JH Blades and is not bound by its terms. Moreover, JH Blades is not a party to this lawsuit and has not brought a claim for subrogation in its own right. At a minimum, Cantium lacks standing to recover fees and costs paid by its insurer.

Furthermore, insurers were not included as a member of the "Company Group" under the MSA, and therefore, JH Blades is not entitled to enforce the MSA for past costs and attorneys fees that it paid. Likewise, the MSA does not require FDF to pay for fees and costs incurred by insurer, JH Blades, to enforce the terms of the MSA.

Based on the foregoing, even if FDF were to owe defense and indemnity under the MSA, the district court erred in its ruling that FDF owes past defense fees and costs paid by JH Blades.

## CONCLUSION

For the foregoing reasons, Defendant/Appellant respectfully requests that the Court reverse the judgment of the district court and fully dismiss the claims against it, or alternatively reverse and remand the matter for further proceedings.

    SUBMITTED BY:

    */s/ Kriste Talton Utley*
    Kriste Talton Utley (LSBA No. 25268)
    Boykin & Utley APLC
    400 Poydras Street Suite 1540
    New Orleans, LA 70130
    Telephone: (504) 527-5450
    Facsimile: (504) 527-5436
    ktu@boykinandutley.com

    Attorney for Appellant/Defendant,
    FDF Energy Services, LLC

**CERTIFICATE OF SERVICE**

      I certify that on September 10, 2025, the foregoing document was forwarded via electronic mail on today's date to the following parties/counsel:

Robert Johnston

Constance Waguespack

Pusateri, Johnston, Guillot & Greenbaum, LLC

1100 Poydras St., Ste. 2250

New Orleans, LA 70163

                                  */S/ Kriste Talton Utley*

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1: this document contains 2,991 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using this document has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO (Version 2304 Build 16.0.16327.20200) 64-bit 365 Word, version 2304 in 14-point font, Times New Roman.

　　　　　Certified this 10th day of September, 2025.

　　　　　/s/ Kriste Talton Utley